# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DWIGHT ELMER BROWN,**

      **Petitioner,**               **CASE NO. 2:10-CV-0105**

                                    **JUDGE GRAHAM**

      **v.**                      **MAGISTRATE JUDGE KING**

**WARDEN, Mansfield Correctional
Institution,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, Doc. No. 2, Respondent's return of writ, Doc. No. 11, Petitioner's traverse, Doc. No. 16, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Third District Court of Appeals summarized the facts and procedural history of this case as follows:

> On April 7, 2006, Brown was indicted on eleven counts, including: two counts of pandering sexually oriented matter involving a minor, violations of R.C. 2907.322(A)(1), second degree felonies; two counts of pandering sexually oriented matter involving a minor, violations of R.C. 2907.322(A)(2), second degree felonies; two counts of pandering sexually oriented matter involving a minor, violations of R.C. 2907.322(A)(3), second degree felonies; two counts of possessing criminal tools, violations of R.C. 2923.24(A), fifth degree felonies; one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third degree felony; and two counts of rape, violations of R.C. 2907.02(A)(1)(b), (B), first degree felonies with specifications that Brown is a sexually oriented violent offender pursuant to R.C. 2941.148.

On April 10, 2006, the prosecutor filed a motion to amend the indictment, as to the specifications on counts six and eleven. That same day, the trial court found the amendments to be well taken and ordered the indictment be amended.

On May 4, 2006, the prosecution and defense filed a joint sentencing recommendation. The next day, an entry was filed withdrawing the plea of not guilty, entering a plea of guilty, and referring the matter for a presentence investigation. Brown pled guilty to one count of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A), second degree felony, and to two counts of rape, violations of R.C. 2907.02(A)(1)(b)(B), first degree felonies. The remaining counts and the specifications were dismissed at the prosecution's request.

On June 7, 2006, the trial court sentenced Brown to five years in prison on the count of pandering sexually oriented matter involving a minor, and a mandatory life prison term on each of the rape counts. The trial court ordered that the sentences be served consecutively.

Brown filed his notice of appeal in appellate case no. 06 AP 0029 on July 6, 2006. The prosecution filed a motion to dismiss the appeal on August 17, 2006, which was denied by this Court. Thereafter, Brown filed a motion to dismiss, and this Court dismissed his appeal on September 29, 2006.

Brown, represented by new counsel, filed his motion to withdraw his guilty plea on August 7, 2007. The trial court filed a hearing notice on August 10, 2007 which notified the parties that there would be a video hearing on all pending motions held on August 24, 2007. Brown filed a motion for a continuance, and the trial court sustained the continuance and placed the matter on inactive status until Brown's counsel notified the court in writing that they were prepared to go forward. On October 9, 2007, Brown filed a motion to set hearing. The trial court filed a hearing notice on October 17, 2007, which set the matter for a video hearing on December 5, 2007. The hearing notice provided that "[c]ounsel for Defendant may be present in the Union County Common Pleas Courtroom or at the Institution with the Defendant. If counsel chooses to be present at the Institution, he/she shall make arrangements with the Institution for admittance for said video hearing." (Doc. No. 65).

The hearing on Brown's motion to withdraw his guilty plea was held, and Brown was not physically present at the hearing but was present

2

via video. Brown's attorneys were physically present at the hearing and objected to Brown not being physically present in the courtroom. (Tr. 12/5/07 at 6). At the end of the hearing, Brown's counsel requested the opportunity to file a "supplement" based on the testimony at the hearing, which the trial court allowed. (Tr. 12/5/07 at 83). On December 26, 2007, Brown filed a motion for an extension of time to file the "supplement," which the trial court granted. On January 15, 2008, the "supplement" was filed. On January 22, 2008, the trial court filed its decision in which it treated Brown's motion like a petition for postconviction relief and overruled it.

It is from the trial court's judgment denying his motion to withdraw his guilty plea, and Brown not being allowed to be physically present at the hearing on the motion that Brown appeals and asserts two assignments of error for our review.

ASSIGNMENT OF ERROR NO. I

THE TRIAL COURT COMMITTED AN ERROR OF LAW BY DENYING APPELLANT THE RIGHT TO BE PRESENT AND CONSULT WITH COUNSEL DURING THE COURSE OF THE MOTION TO WITHDRAW GUILTY PLEA HEARING.

***

ASSIGNMENT OF ERROR NO. II

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

*State v. Brown*, No. 14-08-11, 2008 WL 4193048, at *1-4 (Ohio App. 3d. Dist. Sept. 15, 2008).  On September 15, 2008, the appellate court affirmed the trial court's judgment dismissing Petitioner's motion to withdraw his guilty plea.  *Id.*  On February 4, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Brown*, 120 Ohio St.3d 1508 (2009).

On February 4, 2010, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

3

      1.  The trial court committed an error of law by denying Brown the right to be present and consult with counsel during the course of the motion to withdraw guilty plea hearing.  (Confrontation Clause).

      2.  The trial court abused its discretion in denying the motion to withdraw the guilty pleas based upon Brown's establishment that he had received both ineffective assistance of trial and appellate counsel. (6th Amendment).

It is the position of the Respondent that Petitioner's claims are without merit or procedurally defaulted.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied the constitutional right to be present and to consult with his attorney at the hearing on his motion to withdraw guilty plea.  The state appellate court rejected this claim as follows:

> Brown argues that he was denied his right to be present at the hearing on his motion to withdraw his guilty plea. According to Brown, he was "denied the ability to be present, consult with counsel during the course of the hearing in a confidential manner, and the ability to see the witnesses as they were testifying. (Appellant's Brief at 10). In his argument, Brown points to the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution. Brown argues that criminal defendants have the right to be present at every stage in the trial as required by Section 10, Article I of the Ohio Constitution, and Crim.R. 43(A). Further, Brown argues that there was no need to protect any witnesses or prevent the disruption of the proceedings in his case, and thus, the trial court should not have excluded him from the courtroom during the hearing.

> The Sixth Amendment to the United States Constitution provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * *to be confronted with the witnesses against him.*" In addition, the Ohio Constitution provides:

>     " * * * **In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; * * * to meet the witnesses face**

4

**to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to face as fully and in the same manner as if in court.\* \* \***

Section 10, Article I, Ohio Constitution.

Criminal Rule 43 requires a criminal defendant's presence "at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules." Crim.R. 43(A). The aforementioned criminal rule also provides that a defendant may be excluded for disruptive conduct when the defendant's conduct is "so disruptive that the hearing or trial cannot reasonably be conducted with his continued presence \* \* \*." Crim.R. 43(B).

Brown argues that there was no need to protect any witnesses and there was no indication that Brown would disrupt the hearings. We agree that there were no indications that any witnesses needed to be protected nor were there any concerns about Brown disrupting the hearing.

The Sixth Amendment to the United States Constitution, Section 10, Article I of the Ohio Constitution, and Crim.R. 43 all deal with the defendant's presence or right to confrontation during their trial or criminal prosecution. However, in the present case, Brown has already been convicted and sentenced following his guilty plea. Since the trial and criminal prosecution have been completed, the Sixth Amendment to the United States Constitution, Section 10, Article I of the Ohio Constitution, and Crim.R. 43 does not require the defendant's physical presence at the hearing on his motion to withdraw a guilty plea, nor have we found any Amendments or Criminal Rules that would directly require a criminal defendant's physical presence at a hearing on such a motion.

Moreover, neither Brown nor the prosecution has presented any cases dealing with a criminal defendant's physical presence at a hearing on

5

a motion to withdraw a guilty plea, and we have been unable to find any cases specifically on this issue. Thus, the issue of whether a defendant has a right to be physically present at the hearing on his motion to withdraw a guilty plea appears to be a matter of first impression.

A defendant is not always entitled to a hearing on their motion to withdrawal their guilty plea. "Generally, a hearing on a postsentence motion to withdraw a plea 'is required if the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn.'" *State v. Nathan* (1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044, quoting *State v. Hamed* (1989), 63 Ohio App.3d 5, 7, 577 N.E.2d 1111.

Although Brown claims that he was disadvantaged by his lack of physical presence at the hearing, there is no indication in the record that Brown requested to speak with his counsel privately or that he was denied any such requests. In addition, the trial court told the defendant to inform the court if he was unable to hear via the video any of the proceedings on the motion to withdraw the guilty plea. The transcript of the hearing also indicates that Brown did, in fact, hear what had transpired at the hearing. (Tr. 12/5/07 at 4, 43).

Finally, the trial court gave trial counsel, well in advance of the hearing, the choice of whether to attend the hearing in the courtroom or whether to be present with the defendant at the prison, and Brown's counsel chose to attend the hearing at the courtroom.

Thus, we hold that the trial court did not err in having the defendant present by video for his hearing on his motion to withdraw a guilty plea.

Brown's first assignment of error is overruled.

*State v. Brown*, 2008 WL 4193048, at *2-4 (emphasis in the original).

Respondent contends that Petitioner has failed to present any issue warranting federal habeas corpus review because his claim involves an alleged error in post conviction proceedings. However, the Ohio Supreme Court has held that motions to withdraw guilty pleas made under Rule 32.1 of the Ohio Rules of Criminal Procedure are not governed by Ohio's post-conviction statutes. *See Nisonov*

6

*v. Beightler*, No. 06-1866, 2008 WL 115211, at *2 (N.D. Ohio Jan. 10, 2008)(citing *State v. Bush*,

96 Ohio St.3d 235 (2002)(other citations omitted.)  Nevertheless, the record fails to reflect that

Petitioner is entitled to relief.

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The state court's decision is binding on this Court unless that decision is contrary to or involves an

unreasonable application of clearly established federal law as determined by the United States

Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

> decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( per curiam ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010).

The Sixth Amendment of the United States Constitution guarantees  a  criminal defendant the right to counsel at all "critical stages" of the criminal process."  *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006)(citing *United States v. Wade*, 388 U.S. 218, 224 (1967).  Plea negotiations, guilty plea hearings, and sentencing hearings are all considered to be critical stages of criminal proceedings wherein a criminal defendant has a right to counsel.  *Id.* (citations omitted).  Here, Petitioner acknowledges that the United States Supreme Court has not held that a the Sixth Amendment's confrontation right extends to criminal proceedings outside of the trial, verdict and sentencing proceedings.  He nonetheless argues that Ohio's Criminal Rule 43 entitled him to be present at the hearing on his motion to withdraw guilty plea.  *See Traverse.*

This argument is not persuasive.  To the extent that Petitioner raises an issue regarding the alleged violation of state law or state rules, this claim does not warrant federal habeas corpus relief.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Such are not the circumstances here.

As to Petitioner's claim that he was denied his right to confront witnesses against him in violation of the Sixth Amendment, in *Gilbert v. Hudson*, No. 1:08-CV-1867, 2009 WL 3246978 (N.D. Ohio Oct. 5, 2009), the United States District Court for the Northern District of Ohio rejected a similar argument, concluding that post-plea motions to withdraw a guilty plea under Ohio's Rule 32.1 do not constitute a critical stage of the proceedings at which a defendant is entitled to counsel:

> Post-sentence motions to withdraw guilty pleas are not critical stages. A critical stage is "a step of a criminal proceeding ... that h[olds] significant consequences for the accused." *Van v. Jones* 475 F.3d at 317 (quoting *Bell v. Cone*, 535 U.S. 685, 696, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (footnote omitted)). First, it has been long-established as a matter of Federal criminal procedure that there is no absolute "right" to withdraw a guilty or nolo contendere plea even before sentencing. *See U.S. v. Buckles*, 843 F.2d 469, 470-71 (11th Cir.1988), *cert denied*, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989); *U.S. v. Read*, 778 F.2d 1437, 1440 (9th Cir.1985); *U.S. v. Boone*, 869 F.2d 1089, 1091 (8th Cir.1989); *U.S. v. McFarland*, 839 F.2d 1239, 1241 (7th Cir.1988), *cert. denied*, 486

U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988); *U.S. v. Badger*, 925 F.2d 101, 103 (5th Cir.1991); *U.S. v. Moore*, 931 F.2d 245, 248 (4th Cir.1991), *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991); *Government of the Virgin Islands, v. Berry*, 631 F.2d 214, 219 (3rd Cir.1980); *U.S. v. Rodriguez*, 968 F.2d 130, 140 (2nd Cir.1992), *cert. denied*, 506 U.S. 847 (1992).

Second. . . . [t]here has been no Federal recognition of a right to a post-sentence motion to withdraw guilty plea, and it follows that there is no right to effective assistance of counsel at such proceeding.

. . . [I]t follows that since there is no Federal analog for post-sentence motion to withdraw guilty plea, [Petitioner] cannot demonstrate a Fourteenth Amendment denial of due process[.]

*Id.* at *16-17.  Similarly, in *Spight v. Stovall,* No. 2:07-CV-14230, 2008 WL 2447151, at *3 (E.D. Mich. June 18, 2008), the United States District Court for the Eastern District of Michigan held:

[T]he Supreme Court has referred to a defendant's Confrontation Clause right to be present at trial as a "trial right," *see Stincer*, 482 U.S. at 738 n. 9 (collecting cases). Because the right to confrontation under the Confrontation Clause is a trial right, it does not apply to other court proceedings that are not part of the jury trial. *See Penton v. Kernan*, 528 F.Supp.2d 1020, 1037 (S.D.Cal.2007); *See also Shelton v. Leblanc,* No.2005 WL 3543949 (E.D.La. November 21, 2005) (rejecting habeas petitioner's claim that he was denied the right of confrontation at a hearing on his motion to withdraw his guilty plea).

*Id*. at *4 (citing *Florida v. Nixon,* 543 U.S. 175, 187 (2004)).

This Court is aware of, and Petitioner has referred to, no cases of the United States Supreme Court indicating that a criminal defendant has the right to be physically present and consult his attorney at a post hearing motion to withdraw the guilty plea.  The Court notes that, "[w]hen a criminal defendant enters a guilty plea, he or she waives the constitutional rights that inhere in a

criminal trial, including the right to trial by jury, the protection against self-incrimination, and the

right to confront one's accusers."

Claim one is without merit.

## CLAIM TWO

In claim two, Petitioner asserts that the trial court abused its discretion when it denied his

motion to withdraw guilty plea because he established the denial of the effective assistance of trial

and appellate counsel.  In regard to trial counsel, Petitioner alleges:

> Brown's counsel advised him to plead guilty to charges with two life
> sentences within twenty-five days of his arrest following one (1) hour
> of misinformed attorney consultation.  Brown's counsel performed
> no legal research, had no experience in child pornography cases, did
> not review the videos of Brown's alleged confession, performed no
> independent investigation, did not share the state's discovery with
> Brown, and was unaware of legal or technological defenses in
> Brown's case and did not advise the client regarding 5th amendment
> issues relating to his confession after requesting counsel or potential
> false confession issues.

*Petition*, at 8.  In regard to appellate counsel, Petitioner alleges:

> Appellate counsel, Andrew Sanderson, filed a notice of appeal on
> Brown's behalf.  Sanderson performed no legal research.  He met
> with Brown on only one (1) occasion in order to get his signature for
> the purpose of dismissing his appeal.  He did not consider or advise
> Mr. Brown regarding a potential ineffective assistance of counsel
> assignment of error.  Sanderson was intimidated into dismissing the
> appeal after receiving a threatening letter from the prosecutor.
> Sanderson had yet to even consider one issue for Brown's appeal
> prior to advising his client to dismiss the same.

*Id*.

Respondent, however, contends that Petitioner's claims of ineffective assistance of counsel

are procedurally defaulted because the state appellate court rejected the claims as barred under

Ohio's doctrine of *res judicata*:

> Brown argues that his motion to withdraw his guilty plea should have been granted because he was provided ineffective assistance of both trial counsel and his first appellate counsel. Specifically, Brown argues that his trial counsel was ineffective because: (1) trial counsel only met with him on three occasions for no more than twenty minutes each visit; (2) trial counsel did not inform him about recent judicial decisions dealing with child pornography; (3) trial counsel did not inform him that a confession alone was insufficient, and that there must be some separate evidence that a crime had occurred; and (4) trial counsel's factual and legal investigation was lacking.

> "It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense." *State v. Price*, 3d Dist. No. 13-05-03, 2006-Ohio-4192, ¶ 6, citing *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id., citing *Strickland*, 466 U.S. at 694. To establish prejudice when ineffective assistance of counsel relates to a guilty plea, a defendant must show there is a reasonable probability that but for counsel's deficient or unreasonable performance the defendant would not have pled guilty. *See State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715, citing *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.E.2d 203; *Strickland*, 466 U.S. at 687.

> "Under the doctrine of *res judicata* a defendant cannot raise an issue in a motion for post-conviction relief if he or she could have raised, or did raise, the issue on direct appeal." *State v. Ybarra*, 3d Dist. No. 12-05-05, 2005-Ohio-4913, ¶¶ 7-8, citing *State v. Reynolds* (1997), 79 Ohio St.3d 158, 161, 679 N.E.2d 1131. The doctrine of res judicata has been applied to motions to withdraw a guilty plea. *Reed*, 2005-Ohio-2925, at ¶ 11, citations omitted.

> In the present case, Brown was represented by different counsel on

12

appeal from the counsel that represented him when he pled. Brown's claims of ineffective assistance of trial counsel could have been raised during his direct appeal. Thus, Brown's claims of ineffective assistance of trial counsel are barred by the doctrine of *res judicata*. However, even if Browns' claims were not barred by *res judicata*, the trial court properly denied his motion as he has failed to demonstrate a manifest injustice.

While Brown's affidavit states that he met with Attorney Parsons three times for a total of one hour during his representation, Parsons testified at the hearing that he believed that he met with Brown four times and the meetings lasted between a half hour and an hour. (Brown's Aff. at ¶ 6); (Tr. 12/5/07 at 12). The amount of time that Brown's trial counsel spent with him does not indicate, by itself, whether trial counsel was ineffective.

Brown maintains that trial counsel was ineffective because he failed to inform him that a confession alone was insufficient and there must be some evidence of a crime.

Brown is correct that in order to admit a confession there must be some evidence of a crime. *See State v. Kesler*, 3d Dist. No. 13-06-09, 2006-Ohio6340, ¶ 39, quoting *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E.2d 1038, paragraph two of the syllabus (there must be " 'some evidence outside of the confession that tends to prove some material element of the crime charged [,]' i.e. the corpus delicti.").

However, the "burden on the prosecution to show corpus delicti is minimal." *Id*. at ¶ 40, 114 N.E. 1038, citing *State v. Van Hook* (1988), 39 Ohio St.3d 256, 261, 530 N.E.2d 883. There must be some evidence "tending to prove the fact that a crime was committed." *Id.*, citing *Maranda*, 94 Ohio St. at 371, 114 N.E. 1038. Circumstantial evidence may be relied upon to show corpus delicti. *Id.*, citations omitted.

There were two video tapes providing circumstantial evidence that a crime was committed, and circumstantial evidence is sufficient to provide the corpus delicti. Since the doctrine does not apply in this case, Brown's trial counsel could not be ineffective for not informing him that a confession alone was insufficient.

13

Further, Brown maintains that his trial counsel's factual and legal investigation was lacking. Brown argues that trial counsel failed to review the police interview tape and failed to perform any legal research or independent investigation into the facts. In addition, Brown states that the "complainant depicted in the video was medically and psychologically determined to not have been a victim of any sexual abuse." (Appellant's Brief at 15). Brown maintains that if he had known about the pending charges and his potential defenses, he would not have pled guilty.

Parsons testified that he went to the sheriff's office, reviewed the videos, read the transcript of the police interview, and went over the transcript with Brown. (Tr. 12/5/07 at 15, 17). Parsons testified that he went through the discovery packet with Brown, told Brown what his options were, and Brown decided to plead guilty. (Tr. 12/5/07 at 14).

Although Brown's trial counsel did not watch a tape of the police interview and did not interview any witnesses or experts, Brown's trial counsel did assist him in this case. Trial counsel reviewed the discovery of the case, the transcript of the police interview, discussed the discovery packet with Brown, and informed Brown of his options. Thus, trial counsel did conduct an investigation into the charges against Brown.

Brown also maintains that his trial counsel did not correctly characterize the United States Supreme Court's decision in *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, because the holding was not about "authentication of video images, but the ban on virtual child pornography's unconstitutionality under the First Amendment." (Appellant's Brief at 18).

However, the *Ashcroft* decision is not applicable in the present case. The charges included in the present indictment could not possibly have involved virtual child pornography as it involved acts performed by Brown on a child and transmitted to others by use of the webcam. In addition, Brown's trial counsel did inform him that the prosecution would have to prove that the child pornography images on his computer (which Brown had not yet been charged with) were real images, and the prosecution would have some difficulty with proof.

14

(Tr. 12/5/07 at 21). Accordingly, Brown's trial counsel could not be ineffective in this regard.

After reviewing the record, we find that Brown has failed to establish manifest injustice, which would warrant the withdrawal of his guilty plea based on ineffective assistance of trial counsel.

Brown also argues that he could not have knowingly, intelligently, and voluntarily waived his constitutional rights because he had no indication that there were legal defenses available and was not provided proper consultation by counsel.

This Court has previously addressed these arguments in finding that Brown failed to establish a manifest injustice justifying the withdrawal of his guilty plea. Similarly, Brown did not establish these issues prevented him from entering a knowing, intelligent, and voluntary guilty plea.

Finally, Brown maintains that his appellate counsel was ineffective. Brown argues that after pressure from appellant counsel, he conceded that he was precluded from raising an appeal based on his previous plea which contained a waiver of appellate rights. Brown maintains that his appellate counsel only reviewed a letter from the prosecutor and a copy of the plea agreement "of which appellate counsel could not determine based upon his legal knowledge and skill that the claim of ineffective assistance of counsel was not in fact waived by the client." (Appellant's Brief at 22). Specifically, Brown argues that appellate counsel never requested the file, never disclosed to him that he could pursue ineffective assistance of trial counsel on appeal, and never discussed potential defenses, which he may have raised in his appeal allowing Brown to go outside the waiver of his appellate rights.

Brown's counsel discussed the plea agreement that was executed with him, and the potential consequences of pursuing an appeal which "would have been the voiding of the plea agreement and the indictment of Mr. Brown on additional charges." (Tr. 12/5/07 at 53). The additional charges would have been based on material found on Brown's computer.

15

> In order to establish ineffective assistance, Brown would have to show that the conduct of his appellate counsel was deficient or unreasonable under the circumstances. *Price,* 2006-Ohio-4192, at ¶ 6, citing *Kole,* 92 Ohio St.3d at 306, 750 N.E.2d 148, citing *Strickland,* 466 U.S. at 687. However, Brown has been unable to establish that his appellate counsel's representation was either deficient or unreasonable under the circumstances. Appellate counsel informed Brown about the consequences of pursuing an appeal, and Brown chose to dismiss his appeal.

*State v. Brown*, 2008 WL 4193048, at *5-8.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam; Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually

enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Petitioner argues that his claims are properly before this Court because the state appellate court addressed his claims on the merits.  He argues that his claims are exhausted because he again presented his claims on appeal to the Ohio Supreme Court.  A state appellate court's alternative ruling on the merits does not forgive a waiver or otherwise revive a claim for federal habeas corpus review.  *Harris v. Reed,* 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker,* 344 F.3d 487, 498 (6th Cir.2003) (where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted); *Kenney v. Haviland,* No. 1:04 CV 2194, 2006 WL 2792171, at *6 n. 8 (N.D. Ohio Sep.26, 2006) ("The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar").  Alternatively, Petitioner asserts the ineffective assistance of appellate counsel as cause for any procedural default.

Assuming, *arguendo*, that Petitioner's claims may properly be considered in these proceedings, the record nonetheless fails to indicate that he is entitled to relief.  A federal court may

not grant habeas relief "merely because it disagrees with a state trial court's factual determination." *Dennis v. Mitchell*, 3564 F.3d 511, 518 (6th Cir. 2003).

> Rather, the state court's factual determination must be 'objectively unreasonable' in light of the evidence presented during the state proceedings. Furthermore, a state court's factual determinations are presumed correct, and can only be rebutted by clear and convincing evidence. 28 U.S.C.§ 2254(e)(1).

*Id*. Clear and convincing evidence is that degree of proof which is more than a mere preponderance of the evidence, but does not rise to the certainty required under beyond a reasonable doubt, and which will produce a "firm believe or conviction as to the facts sought to be established." *Elder v. Berghuis*, 644 F.Supp.2d 888, 893 (W.D. Mich. 2009). Petitioner has failed to meet this standard here.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama,* 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, the Court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States,* 397 U.S. 742, 750 (1970).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's

ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

As detailed by the state appellate court, Petitioner pleaded guilty pursuant to the terms of his negotiated guilty plea to one count of pandering sexually oriented matter involving a minor and two counts of rape. In return, the State dismissed the remaining eight charges against him and agreed not to pursue any additional charges relating to images found on his computer. *Exhibit 2 to Return of Writ; Hearing on Motion to Withdraw Guilty Plea*, Doc. No. 17-4, at 20. The trial court sentenced Petitioner, pursuant to the joint agreement of the parties, to two consecutive life terms of incarceration,[1] with a five year consecutive sentence. Petitioner waived his right to appeal. He agreed to forfeit items seized by police, and stipulated to classification as a sexual predator.

---

[1] The rape charges, which involved a child under the age of ten, carried a mandatory term of life imprisonment. *See Guilty Plea Hearing*, at 3.

At the time of Petitioner's guilty plea hearing, the prosecutor outlined the terms of Petitioner's negotiated guilty plea agreement indicating that Petitioner understood that he would not be eligible for parole until he had served twenty-five years.  *Hearing on Change of Plea*, Doc. No. 17-2, at 5.  Petitioner agreed with all of the stated terms.  *Id*., at 7.  Defense counsel indicated that he had advised Petitioner of possible defenses to the charges.  *Id*., at 6-7.  The trial court advised Petitioner of the nature of the charges against him and the potential penalties he faced, including the mandatory life terms that did not permit eligibility for parole before he had served ten years (on each count of rape) in prison and which made him ineligible for judicial release.  *Id*., at 7-8.  Petitioner indicated at all times that he understood.  *Id*. at 8-10.  He understood the ramifications of the sentence that he faced on each of the rape charges.  *Id.* at 11-12.  He understood his possible defenses to the charges.  He was satisfied with his attorney's representation.  *Id.* at 12.  He denied having been made any promises other than those contained in his plea agreement and denied that he had been threatened or forced into pleading guilty.  *Id*. at 12.  He understood that he was waiving his right to appeal a jointly recommended sentence.  *Id*. at 14.  He agreed to waive his right to appeal.  *Id*. at 14-15.  He had no questions.  *Id*. at 15.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea hearing], as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Nonetheless, Petitioner now argues that his defense attorney performed in a constitutionally

ineffective manner by permitting him to plead guilty where the prosecution lacked sufficient evidence to establish guilt. He argues that the only evidence against him constituted his voluntary but false confession to police. He complains that his attorney failed to consult with or obtain expert witnesses who could have challenged the evidence against him and failed to obtain medical and psychological evaluations of his children which did not indicate abuse, and in which his daughter denied that he had sexually abused him. *See Memorandum in Support of Petition.*

In support of this claim, Petitioner attached to his motion to withdraw guilty plea a report from the Center for Child and Family Advocacy at Columbus Children's Hospital indicating in relevant part that the alleged victim had previously disclosed to police that Petitioner sexually abused her by "digital genital contact (offender to victim), exposure to pornography, oral genital contact (victim to offender)." The report also refers to videotapes which apparently depicted Petitioner sexually abusing his daughter while his son witnessed these acts. The Union County Children Services indicates that Petitioner admitted that his attempt to put his penis into his daughter was unsuccessful because it was too big. Reportedly, vaginal-digital penetration of the daughter by Petitioner was depicted on the tapes; Petitioner's son was present in one video clip in which the child was depicted kissing Petitioner's penis. The alleged victim denied being sexually abused by anyone in her interview at the child assessment center. She also denied that she had ever spoken with police. She denied seeing her brother's or her father's private parts. The physical examination did not establish that the child had been sexually abused, but indicates:

> More than 90% of girls with substantiated cases of sexual abuse have a normal or nonspecific physical examination. Therefore, today's findings do not exclude the possibility of sexual abuse, nor do normal physical examination findings negate the child's disclosure of sexual abuse. Gave no history of sexual abuse during forensic interview.

> There is videotaped evidence of sexual contact and perpetrator has
> confessed.  Normal ano-genital exam.

*Exhibit 11 to Return of Writ*.  Petitioner also attached his own affidavit, in which he complains that

his attorney advised him to plead guilty because he would be found guilty at trial.  *See Exhibit 10

to Return of Writ.*

According to the testimony of Petitioner's defense counsel at the evidentiary hearing on his

motion to withdraw guilty plea, there was evidence establishing Petitioner's guilt of the charges,

including three videotape recordings – two of which apparently depicted Petitioner committing the

sexual acts with which he was charged.  *Hearing on Motion to Withdraw Guilty Plea*, at 23-24.

Petitioner's computer contained additional images of children, for which he was not charged.  *Id*.

at 20-23.  Petitioner admitted in a videotaped statement to police to sexually abusing his daughter

multiple times each month beginning when she was three years old through age seven.  *Id*. at 20, 24;

*Exhibit 15 to Return of Writ*, at 3.  Defense counsel met with Petitioner four times for ½ to 1 hour

per meeting.  *Hearing on Motion to Withdraw Guilty Plea,* at 12, 32.  Counsel reviewed the

discovery packet with Petitioner and advised him of his available options. *Id.*, at 14.  It was

Petitioner who made the decision to plead guilty.  *Id.*  Counsel investigated the facts and legal

defenses of the case.  *Id.,* at 15.  He reviewed the videotapes and the transcript of Petitioner's

statement to police.  *Id.,* at 16-17, 23-24.  He saw no basis on which to file a motion to suppress

Petitioner's statement to police.  *Id.,* at 40.  He discussed with Petitioner potential competency issues

of child witnesses and believed that the alleged victim would be considered competent to testify at

any trial.  *Id*. at 31.

The report(s) referred to by Petitioner did not necessarily assist him in view of the alleged

victim's reported prior disclosure to police, videotapes apparently supporting the charges alleged, and Petitioner's statement to police admitting the acts charged.  The record before this Court indicates that the evidence against Petitioner was overwhelming, particularly in view of the videotapes depicting the acts charged and Petitioner's own statement to police identifying himself and his daughter on those videotapes.[2]

Petitioner has failed to establish that the state appellate court's decision rejecting his claim that his defense attorney performed in a constitutionally ineffective manner in connection with Petitioner's guilty plea warrants federal habeas corpus relief.

The record likewise fails to support Petitioner's claim of ineffective assistance of appellate counsel.  The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A. Were the omitted issues "significant and obvious?"

B. Was there arguably contrary authority on the omitted issues?

---

[2]  For a more detailed description of the evidence of Petitioner's guilt, *see Exhibit 15 to Return of Writ.*

C. Were the omitted issues clearly stronger than those presented?

D. Were the omitted issues objected to at trial?

E. Were the trial court's rulings subject to deference on appeal?

F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?

H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999). The Sixth Circuit cautioned, however, that

this list is not exhaustive and need not produce a certain "score." *Id*. at 428.

Petitioner complains that his appellate counsel failed to conduct any legal research and

was"intimidated" into persuading Petitioner to withdraw his appeal by a letter from the prosecuting

attorney.  The letter to which Petitioner refers indicates in relevant part that Petitioner had waived

his right to appeal as a part of his negotiated guilty plea. *Hearing on Motion to Withdraw Guilty*

*Plea,* at 48-50, 70.  Thus, if Petitioner had persisted in appealing his convictions, he would have

been indicted on additional counts of pandering obscenity for which he had not been charged and

the prosecution would seek reinstatement of the charges against him, including those that had been

24

dismissed. *Id.,* at 77-78, 81.   *See Exhibit 10 to Return of Writ,* Doc. No. 11-1, at 97-98.

At the hearing on Petitioner's motion to withdraw his guilty plea, appellate counsel indicated that he met with Petitioner on one occasion, at which time they discussed the plea agreement that Petitioner had signed, and Petitioner's waiver of his right to appeal.   "[M]ore importantly, [they discussed] what could be the consequences which would have been the voiding of the plea agreement and the indictment of Mr. Brown on additional charges."   *Hearing on Motion to Withdraw Guilty Plea,* at 53.   Petitioner thereafter signed a motion to withdraw his guilty plea indicating*:*

> I, Dwight Elmer Brown, having been fully advised of my Ohio and United States constitutional and statutory rights to appeal my convicitons and the sentences imposed, request that the appeal filed on my behalf be dismissed and do hereby waive any rights to appeal.

*Exhibit 8 to Return of Writ* Doc. No. 11-1, at 43.   Petitioner has failed to establish that his appellate attorney performed in a constitutionally inadequate manner.   Moreover, it appears that Petitioner knowingly and voluntarily dismissed his appeal.   Finally,  the record fails to indicate that Petitioner had any potentially meritorious issues for appeal.

Claim two is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*  
Norah McCann King  
United States Magistrate Judge

January 3, 2011